UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MICHAEL A. WILLNER and MARGUERITE WILLNER,<br><br>      Plaintiffs,<br><br>      v.<br><br>JAMES DIMON *et al.*,<br><br>      Defendants. | Case No. 15-cv-01840 (CRC) |

## MEMORANDUM OPINION

Plaintiffs Michael and Marguerite Willner defaulted on a $3 million refinancing loan that they obtained in 2006 from the now-defunct Washington Mutual Bank. Seeking to halt a foreclosure sale of their property, the Willners brought suit in the Eastern District of Virginia alleging, in essence, that the banks who had since acquired rights to the loan had no power to enforce it. That court dismissed many of the Willners' claims for lack of subject matter jurisdiction. It found that the claims were governed by the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA")—a statute that establishes an administrative scheme to resolve claims against failed financial institutions that have been placed in receivership with the Federal Deposit Insurance Corporation ("FDIC"). As a result, in the court's view, the Willners' failure to raise their claims with the FDIC in the first instance barred the court from reviewing them.

The Fourth Circuit affirmed that dismissal in February 2017. In the meantime, the Willners had filed their claims with the FDIC. The FDIC denied them as untimely because they were filed long after the December 2008 "bar date" that the FDIC set to govern claims against Washington Mutual Bank. The Willners, proceeding *pro se*, then brought suit in this Court

challenging the FDIC's denial. Following the Fourth Circuit's decision, they amended their complaint to add constitutional claims against the FDIC. Because the Willners fail to state viable claims against the FDIC, and because the doctrine of issue preclusion requires this Court to accord conclusive effect to the Fourth Circuit's relevant holdings, the Court will dismiss all of the Willners' claims.

## I. Background

The following facts are drawn from the Willners' Amended Complaint and are taken as true for purposes of this motion. The Willners own a home on an eleven-acre lot in Lorton, Virginia along the Potomac River. They purchased the lot in 1989 for $477,000 and spent about $2 million to build a custom home on the property. Am. Compl. ¶¶ 28–29. Between then and 2006, the Willners obtained three refinancing loans from Washington Mutual Bank, FA ("WMBFA")—a trade name for the now-defunct Washington Mutual Bank ("WMB")—to "cash out" equity in the property in order to pay their mortgage. Id. ¶ 32.

At the heart of this litigation is the third of these refinancing loans, which Mr. Willner (who is an attorney) obtained from WMBFA in September 2006 for $3 million. In applying for this loan, Mr. Willner alleges that he told a WMBFA employee that he expected about $52,000 in annual income that year. Id. ¶ 37. The employee, according to Mr. Willner, listed this figure as Mr. Willner's *monthly* income. Id. ¶ 38. A few weeks later, a different WMBFA employee provided Mr. Willner with WMBFA's estimate of the property value—$5.2 million—which the Willners believed to be accurate. But WMBFA received a separate, undisclosed appraisal of the property for only $4 million. Mr. Willner alleges that he would not have obtained the loan (and instead would have sold the property) had he known about the lower appraisal value. Id. ¶ 49.

The refinancing loan was secured by a deed of trust for the property. Id. Ex. C. Mrs. Willner, afraid of risking her share of the equity, refused to apply or cosign for the loan and did not sign the promissory note. Id. ¶ 50–51. Both she and Mr. Willner did, however, sign the deed of trust, which identifies both as the "borrower." Id. ¶¶ 64–65; id. Ex. C, at 3, 15. By signing the deed and not the promissory note, Mrs. Willner apparently believed that she was releasing her interest in Mr. Willner's share of the property and thereby allowing him to secure the loan with his interest alone. Id. ¶ 65.

Not long after the 2008 recession struck, WMB collapsed. On September 25, 2008, the Office of Thrift Supervision, an arm of the Treasury Department, declared the bank insolvent and placed it into receivership with the FDIC. Id. ¶ 101. Notice of the FDIC's receivership and the claims bar date was published in several newspapers, including the *Wall Street Journal*. Decl. Donald G. Grieser Support FDIC-Receiver's Mot. Dismiss ¶ 5. The day that the FDIC took over WMB, it facilitated a transaction whereby JPMorgan Chase bought most of WMB's assets, including the right to service Mr. Willner's loan. Am. Compl. ¶ 103. Sometime in October 2008, Chase notified Mr. Willner that it had acquired the right to service the loan from the FDIC. Id. ¶ 107.

The Willners' loan was subsequently repackaged and transferred to U.S. Bank N.A., and the right to service the loan was transferred to Select Portfolio Servicing, Inc. Id. ¶¶ 16–17. The Willners made payments on the loan for several years without serious issue. But by mid-2010, signs of trouble arose. The couple sought to refinance the loan with Chase in July 2010, but were denied due to insufficient income. Id. ¶ 111. By May 2011, the Willners were unable to keep up on their loan payments and defaulted. Id. ¶¶ 112, 115–16. Mr. Willner asked Chase for a 90-day delay on foreclosure so that he could attempt to sell the property, but Chase apparently

ignored the request. Id. ¶ 115. He also sought a loan modification from Chase, but it notified him that he was ineligible due to the nature of the loan. Around this time, Mr. Willner discovered documents purportedly showing that his loan application listed his annual income as $624,000 (or $52,000 per month); that WMBFA had received a $4 million appraisal for the property; and that, according to records of the Securities and Exchange Commission, WMBFA ceased to exist several months before the loan agreement was executed. Id. ¶¶ 117–52.

In November 2012, Chase notified the Willners that it intended to foreclose on the property by auctioning it the next month. Mr. Willner filed for Chapter 11 bankruptcy shortly thereafter. Id. ¶ 182. While bankruptcy proceedings were pending,[1] the Willners in July 2014 filed suit *pro se* in the Eastern District of Virginia against JPMorgan Chase, its CEO James Dimon, U.S. Bank, and Select Portfolio Servicing. See Willner v. Dimon, 2015 WL 12755135 (E.D. Va. May 11, 2015). In its twenty-seven counts, the complaint essentially sought a declaration that the promissory note and deed of trust were unenforceable, an injunction to halt any foreclosure, and damages. Id. at *2. By order issued in May 2015, the district court dismissed the entire case on various grounds. As relevant here, it dismissed twelve of the counts for lack of subject matter jurisdiction, finding that, under FIRREA, the Willners' failure to properly exhaust those claims with the FDIC precluded the court from reviewing them. The Willners then appealed to the Fourth Circuit.

In August 2015, while their appeal was pending, the Willners each filed a proof of claim with the FDIC. Decl. of Donald G. Grieser in Support FDIC-Receiver's Mot. Dismiss ("Grieser Decl.")

---

[1] In November 2016, Mr. Willner's Chapter 11 plan was approoaved and the bankruptcy case was closed. Am. Compl. ¶ 213.

4

¶ 6; id. Ex. C.  Both alleged six identical claims that requested essentially the same relief sought in their Fourth Circuit litigation.  In certified letters dated September 2, 2015, the FDIC denied the Willners' claims.  Defs.' MTD Ex. D.  The FDIC explained that it received their proofs of claim after the December 30, 2008 bar date; that FIRREA (specifically, 12 U.S.C. § 1821(d)(5)(C)(i)) demanded denying the claims as untimely filed; and that the FDIC would "not consent to any further administrative review of this claim determination."  Id.

Shortly after they received the FDIC denial letters, the Willners brought suit in this Court against James Dimon, JPMorgan Chase, U.S. Bank, Select Portfolio Servicing, and nineteen unspecified Does—all together, the "bank defendants."  The Willners sought the same relief that was denied by the FDIC:

1. A declaration that none of the bank defendants have a legal right to foreclose on the property under the deed of trust because it was signed only by Mr. Willner;

2. A similar declaration based on the fact that the bank defendants would be unjustly enriched if allowed to foreclose;

3. Damages and the right to rescind the loan agreement based on all of the bank defendants' fraudulent concealment of facts material to the contract;

4. A declaration as to the bank defendants that the deed of trust is unenforceable because WMBFA had no legal capacity to enter a loan agreement;

5. An order to quiet title against U.S. Bank based on the foregoing; and

6. Damages based on the bank defendants' conspiracy to commit fraudulent concealment.

See Amend. Compl. 34–46.  At the parties' request, this Court stayed this case until the Fourth Circuit issued its decision.

The Fourth Circuit ultimately affirmed dismissal.  849 F.3d 93, 114 (4th Cir. 2017).  With respect to the claims that had been dismissed pursuant to FIRREA,[2] the court rejected the

---

[2] Except for one claim not relevant here.  See 849 F.3d at 111, 113 n.7.

argument that those claims actually challenged conduct by Chase and U.S. Bank—neither of which were under FDIC receivership—and therefore did not fall within FIRREA's exhaustion requirement. As the court explained, while several counts of the complaint were "formally asserted against Chase and U.S. Bank, they [were] functionally pleaded against WMB's acts and omissions." Id. at 104; see also id. at 110–11. The Court also saw no constitutional problem with FIRREA's withdrawal of jurisdiction for claims that purportedly "didn't accrue until Chase threatened foreclosure, which was years after the December 2008 'bar date,'" as it found that "the Willners had actual notice that WMB was in receivership" before that date. Id. at 111. The Willners did not seek Supreme Court review of the Fourth Circuit decision.

Following the Fourth Circuit's decision, this Court lifted its stay. The Willners filed an amended complaint, adding as a defendant the FDIC in its capacity as receiver for WMB. The amended complaint asserted three new counts against the FDIC alone with a unifying theme: that, unless the Court agreed to review the six claims raised against the bank defendants, the FDIC's administrative denial of those claims as untimely would violate their due process rights under the Fifth Amendment; their Seventh Amendment right to a jury trial; and Article III. Am. Compl. 49–51. In separate motions, the bank defendants and the FDIC have moved to dismiss the Willners' claims.

## II.  Legal Standards

### A.  FIRREA's Administrative Process

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") allows the FDIC to take control of a failed financial institution as its "receiver" and wind up the institution's affairs. See Freeman v. FDIC, 56 F.3d 1394, 1398 (D.C. Cir. 1995); 12 U.S.C. § 1821(d)(2). Part of the wind-up process involves resolving outstanding claims against the bank

6

or the FDIC as its receiver. FIRREA sets up an administrative process for the FDIC to adjudicate these claims in the first instance. Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1141 (D.C. Cir. 2011).

When the FDIC becomes a bank's receiver, it must promptly publish a notice instructing creditors to file their claims against the bank or receiver with the FDIC by a certain date. This so-called "bar date" must be at least 90 days after publication of the notice. 12 U.S.C. § 1821(d)(3)(B). The FDIC must mail a similar notice to other possible claimants of which it becomes aware. Id. § 1821(d)(3)(C). The FDIC has 180 days to "allow" (*i.e.*, pay) or "disallow" (*i.e.*, refuse to pay) any claim filed, and it must provide written notice of any disallowance with reasons provided. Id. § 1821(d)(5)(A).

FIRREA imposes limits on the review of disallowed claims. For claims that were properly filed before the bar date, the claimant may seek either direct judicial review or administrative (followed by judicial) review. The claimant must do so within 60 days of the FDIC's notice of disallowance or the end of the FDIC's 180-day period to review the claim, whichever is earlier. Id. § 1821(d)(6)–(7). Failure to comply with the 60-day limitations period is fatal to the claim, "and the claimant shall have no further rights or remedies with respect to such claim[s]." Id. § 1821(d)(6)(B).

Claims filed after the bar date, on the other hand, are automatically disallowed "and such disallowance shall be final." Id. § 1821(d)(5)(C)(i). The statute provides for one exception: the FDIC may consider a late-filed claim if "(I) the claimant did not receive notice of the appointment of the receiver in time to file [a] claim before [the bar] date; and (II) such claim is filed in time to permit payment of such claim." Id. § 1821(d)(5)(C)(ii). Where this exception applies, the FDIC has discretion to evaluate the claim as if it were timely filed.

7

Courts have no jurisdiction to review claims that have not properly gone through FIRREA's administrative procedure. Specifically:

> Except as otherwise provided in this subsection [*i.e.*, through the administrative claims process], no court shall have jurisdiction over—
>
> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as such receiver; or
>
> (ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). The D.C. Circuit has read this language to create an exhaustion requirement for claims falling within FIRREA. Thus, "anyone bringing a claim against or 'seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver" must first file "an administrative claim under the FDIC's administrative claims process." Freeman, 56 F.3d at 1400. Same goes for anyone who brings a claim "relating to any act or omission of such institution or the [FDIC] as its receiver." 12 U.S.C. § 1821(d)(13)(D)(ii). On the other hand, FIRREA's exhaustion requirement does not govern claims against a third-party institution (that is, one never placed in receivership) based on that third party's own conduct. See Am. Nat'l Ins. Co., 642 F.3d at 1141–42. But a claimant cannot avoid FIRREA's requirements by formally pleading claims against a third party institution if its claims are *functionally* against an institution in receivership. Id. at 1144; see also Westberg v. FDIC, 741 F.3d 1301, 1306 (D.C. Cir. 2014).

Where a claimant has failed to exhaust FIRREA's administrative process with respect to a claim, federal courts lack subject matter jurisdiction to review that claim. See Westberg, 741 F.3d at 1303; see also Alkasabi v. Wash. Mut. Bank, F.A., 31 F. Supp. 3d 101, 107 (D.D.C. 2014).

8

B.  Motions to Dismiss

The defendants move to dismiss this case for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim on which relief can be granted, id. 12(b)(6).  On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  The Court must accept the plaintiff's factual allegations as true.  United States v. Gaubert, 499 U.S. 315, 327 (1991).

The Court must grant a motion under Rule 12(b)(6) if the allegations in the complaint do not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**III.   Analysis**

The defendants urge dismissal on several grounds.  Most broadly, they contend that the Court lacks jurisdiction to review any of the Willners' claims because none were timely filed with the FDIC.  In addition to making this argument on the merits, the defendants invoke the doctrine of issue preclusion and argue that the Fourth Circuit has already conclusively established that this Court lacks jurisdiction over the Willners' claims.  The FDIC also argues that the Willners' failure to file suit against it within 60 days of its administrative denial serves as an independent barrier to this Court's jurisdiction; that the Willners lack standing to raise constitutional claims against it; and that their constitutional claims fail on the merits.

A.  Counts 1–6: Claims Against All Defendants Based on the Loan

The Willners accept that, as a general matter, claims against WMB or against the FDIC as its receiver are governed by FIRREA's administrative claims process.  They also concede that

9

they filed their claims with the FDIC long after the December 30, 2008 bar date. But they contend that their tardiness does not foreclose judicial review because their claims were not discoverable until well after the bar date. Therefore, they argue, the claims are timely, either because they fall within FIRREA's exception for late-filed claims or because the bar date should be equitably tolled. The defendants respond that none of the Willners' claims falls within FIRREA's exception, and that their failure to timely exhaust their remedies with the FDIC deprives this Court of jurisdiction (and thus of the ability to toll any filing deadlines). They further contend that, even if the Court could equitably excuse the Willners' untimely filing, tolling is not warranted because the claims were discoverable with due diligence.

Resolving these competing arguments requires answering three questions: First, are the claims subject to FIRREA at all, given that they are not formally pled against WMB or WMBFA, but rather against a subsequent holder and servicer? Second, assuming the Willners were required to proceed through FIRREA's administrative process, should the FDIC have excused their late filing under the statutory exception for late-filed claims? Finally, assuming that the FDIC properly deemed the claims untimely under FIRREA, can (and should) the Court excuse the late filing for any other reason?

   *1.  The Claims are Subject to FIRREA's Administrative Claims Process*

The first question—whether the Willners were required to file these claims with the FDIC—has been answered directly by the Fourth Circuit. And, as the Willners appear to concede, the doctrine of issue preclusion prevents this Court from revisiting the Fourth Circuit's determination. See Michael Willner Opp. at 13, 17.

Issue preclusion aims to "reduce unnecessary litigation and foster reliance on adjudication." Allen v. McCurry, 449 U.S. 90, 95 (1980). The doctrine bars a plaintiff from

relitigating a legal or factual issue that the plaintiff contested and lost in a prior case, so long as the issue was "actually and necessarily determined by a court of competent jurisdiction in that prior case" and "preclusion in the second case [would] not work a basic unfairness to the party bound by the first determination." Yamaha Corp. of Am. v. United States, 961 F.2d 245, 254 (D.C. Cir. 1992)). The D.C. Circuit construes the "basic unfairness" exception narrowly—the party seeking to avoid preclusion must make "a *compelling* showing of unfairness." Canonsburg Gen. Hosp. v. Burwell, 807 F.3d 295, 306 (D.C. Cir. 2015) (quoting Otherson v. DOJ, 711 F.2d 267, 277 (D.C. Cir. 1983)). Typically, this sort of showing is possible only where the parties in the first case lacked an incentive to litigate the issue sought to be precluded, or where there has been a significant change in controlling law since the first case. See id.

In deciding whether issue preclusion applies, this Court does not review the merits of the prior decision, even if it disagrees with the other court's outcome or reasoning. Nat'l Post Office Mail Handlers, Watchmen, Messengers, and Grp. Leaders Div. of Laborers' Int'l Union of N. Am. v. Am. Postal Workers Union, 907 F.2d 190, 194 (D.C. Cir. 1990). That is true even where the prior decision conflicts with D.C. Circuit precedent. See id.; Yamaha, 961 F.2d at 258 ("[T]he fact that the substantive law may be different in the two jurisdictions does not affect the application of issue preclusion.").

All of the elements of preclusion are met with respect to whether the Willners' claims against WMB's successors-in-interest are subject to administrative exhaustion under FIRREA. The Willners were plaintiffs in the Eastern District of Virginia and appealed that court's resolution of this issue to the Fourth Circuit; they squarely presented the issue to the Fourth Circuit; the Fourth Circuit decided the issue against them; and its determination was necessary to its ultimate ruling. Specifically, the Fourth Circuit could affirm dismissal of the relevant claims

11

for lack of jurisdiction only if the claims functionally challenged conduct by WMB—only then would the claims be subject to FIRREA's administrative process.  The Willners' primary argument was the same one they raise here: that the claims were against Chase and U.S. Bank, not WMB.  The Fourth Circuit, while agreeing that FIRREA did not cover claims "against a third-party bank for its own wrongdoing," rejected the contention that the Willners' claims were actually based on third-party conduct.  849 F.3d at 104 (quoting Am. Nat'l Ins. Co., 642 F.3d at 1142).  The court instead found that Counts 1, 2, 5, 6, and 16–19 of the complaint in the Eastern District of Virginia were "functionally pleaded against the acts and omissions of WMB rather than against independent misconduct by Chase and U.S. Bank," and thus that FIRREA "operate[d] as a jurisdictional bar" for those claims.  Id.  The allegations in those dismissed counts encompass all of the allegations raised in Counts 1–6 of the amended complaint in this case.  Compare 849 F.3d at 101–02, with Am. Compl. 34–48.  As a result, the Fourth Circuit has conclusively determined that the claims raised here were required to go through FIRREA's administrative process.

    2. *The Claims Do Not Fall Within FIRREA's Exception for Late-Filed Claims*

 Given that the claims are subject to FIRREA's administrative scheme, the Court must next decide whether the claims fall within the statute's exception for late-filed claims.  Again, the statutory exception applies only if "the claimant did not receive notice of the appointment of the receiver in time to file [a] claim before [the bar] date."  12 U.S.C. § 1821(d)(5)(C)(ii)(I).  The D.C. Circuit has clarified that the relevant "notice" is that of the institution's receivership generally, and that the failure to receive notice of the bar date specifically does not bring a claimant within the statutory exception.  See Freeman, 56 F.3d at 1402; Alkasabi, 31 F. Supp. 3d at 107–08.

This issue, too, has been conclusively resolved by the Fourth Circuit. Specifically, by finding that the Willners had actual notice of WMB's receivership well before the bar date, the Fourth Circuit has established that their claims do not fall within the statutory exception. In the Fourth Circuit, the Willners argued that requiring administrative exhaustion of their claims would violate their due process rights because it left them without any viable forum for claims that accrued *after* the bar date. The court accepted that the Willners might be left without such a forum, but it found no due process violation. Citing circuit precedent, the court explained that "[a] plaintiff cannot challenge her failure to exhaust claims with the FDIC on due process grounds if she has actual notice that the failed bank is in receivership or 'kn[ows] enough about the situation to [have] inquiry notice as to the details of the administrative process.'" 849 F.3d at 111 (quoting Elmco Props., Inc. v. Second Nat'l Fed. Sav. Ass'n, 94 F.3d 914, 921 (4th Cir. 1996)).

Applying this standard, the Fourth Circuit found that "the Willners had actual notice that WMB was in receivership prior to the 'bar date,'" and thus that they had no viable due process challenge. Id. The court's conclusion that the Willners had actual notice of WMB's receivership was therefore necessary to its ruling, and the Willners, with the aid of counsel, ardently litigated the issue.[3] This Court must therefore accord preclusive effect to the Fourth Circuit's conclusion. And because FIRREA's exception applies only where the claimant did not have notice of an institution's receivership in time to file claims with the FDIC, the Willners' claims do not fall within the exception.

---

[3] While Mr. Willner separately raised certain arguments *pro se*, all of the issues relevant to this case were argued by counsel and were jointly appealed to the Fourth Circuit by Mr. and Mrs. Willner, the latter of whom was represented by esteemed counsel. 849 F.3d at 99, 103.

13

### 3. *The Willners' Failure to File the Claims Before the December 2008 Bar Date Deprives this Court of Jurisdiction to Review the FDIC's Denial*

To summarize: the Willners' claims are subject to FIRREA's exhaustion requirement and the statute's late-filed exception does not apply to their claims. The final question is therefore whether the Willners' late filing should be excused for some other reason.

The Willners' argument on this front runs as follows: The claims they raised with the FDIC were not reasonably discoverable until well after the 2008 bar date had passed. Where a claim was not discoverable until after the bar date, the bar date must be treated like a statute of limitations and not as a jurisdictional barrier to this Court's review of those claims. Otherwise—given the FDIC's denial of their claim as untimely and this Court's lack of jurisdiction to review that denial—the Willners would lack any forum in which to challenge a deprivation of their property interest, which would violate their due process rights.

If this Court had power to consider the question anew, it might well agree with the Willners. Their argument, after all, finds some support in D.C. Circuit caselaw: While the D.C. Circuit in Freeman held that FIRREA's exhaustion process is mandatory and jurisdictional, and that in typical circumstances its exhaustion scheme raises no constitutional problems, the court noted that treating the bar date *itself* as jurisdictional could violate due process if a party had no meaningful opportunity to raise a claim with the FDIC before the bar date. See 56 F.3d at 1403 n.2 ("[I]f [the plaintiffs] were not afforded notice of their exclusive opportunity to present their claims, serious due process concerns would be implicated . . . ."). The D.C. Circuit suggested that, in such a case, a reviewing court should treat the bar date similarly to a statute of limitations: the failure to comply with the deadline would not deprive a court of jurisdiction to review the late claim, but rather would serve as a defense to pursuit of the claim on the merits. Id. A claimant could then overcome that defense by showing "'equitable reasons for

14

noncompliance' with the time bar." Id. (quoting Bayer v. U.S. Dep't of Treasury, 956 F.2d 330, 332–33 (D.C. Cir. 1992)). Arguably, the D.C. Circuit's concerns extend to claims that were not reasonably discoverable until well after the bar date passed—if the bar date were not tolled, claimants would have no opportunity to raise those claims with the FDIC or in a federal court. See Alkasabi, 31 F. Supp. 3d at 110–11.

But, yet again, the Fourth Circuit decision resolved this very issue against the Willners, and this Court must adopt that resolution under the doctrine of issue preclusion. As part of the Willners' argument that forcing their claims through FIRREA would deprive them of due process, they argued persuasively in their opening appellate brief that they

> not only lacked sufficient notice to file a timely claim; their claims *had not even accrued* in time to file a timely claim. Thus, according to the FDIC, the Willners' claims were late the instant they accrued and were, therefore, impossible to bring. That cannot be correct. Yet that is what follows from the district court's dismissal. If the Willners are deprived of their property without "any opportunity to protest—either pre- or post-deprivation," their due process rights will be violated.

Corr. Joint Opening Br. for Pls.-Appellants at 36, Willner v. Dimon, 849 F.3d 93 (4th Cir. 2017) (No. 15-1678), 2015 WL 6470972, at *36. That argument was, however, squarely rejected by the Fourth Circuit:

> [W]e [now] take up the Willners' argument that requiring administrative exhaustion . . . violates the Fifth Amendment's Due Process Clause because their claims didn't accrue until Chase threatened foreclosure, which was years after the December 2008 "bar date" to submit claims against WMB to the FDIC. This argument also fails.
>
> A plaintiff cannot challenge her failure to exhaust claims with the FDIC on due process grounds if she has actual notice that the failed bank is in receivership or "kn[ows] enough about the situation to [have] 'inquiry notice' as to the details of the administrative process." Here, the Willners had actual notice that WMB was in receivership prior to the "bar date." As described above, [the relevant claims] are functionally, if not formally, pleaded against WMB's acts and omissions. Furthermore, those [claims] are based upon conduct of WMB which took place before WMB entered into receivership.

15

> Section 1821(d)(13)(D) [of FIRREA] does not contain a discovery rule that tolls claims. It is, by design, severe. The onus was on the Willners to timely submit any claims that they had against WMB to the FDIC, and they failed to do so. There is no constitutional violation here.

Willner, 849 F.3d at 111–12 (citation omitted).

In other words, the Fourth Circuit found it irrelevant that the Willners' claims may not have been discoverable until after the bar date because it interpreted FIRREA to contain no "discovery rule that tolls claims." Id. at 112. In the court's view, the fact that the claims were functionally pleaded against WMB meant that the Willners were required to submit them to the FDIC before the bar date—no exceptions. The Fourth Circuit's resolution was essential to its ultimate conclusion—the opposite holding would have required, as a constitutional matter, that the Willners be allowed to raise their claims notwithstanding the bar date.

The Fourth Circuit's holding was avowedly "severe," id., and is somewhat in tension with the D.C. Circuit's decision in Freeman. But, again, the operation of issue preclusion does not depend on whether the prior decision comports with the D.C. Circuit's interpretation of FIRREA or the due process clause. Where a prior court has resolved an issue between the same parties that was necessary to its judgment, its resolution is final subject only to narrow equitable exceptions. And none of the recognized equitable exceptions to issue preclusion apply, as the parties had robust incentives to litigate the issue and nothing about the legal landscape has changed since the Fourth Circuit's February 2017 ruling.[4]

---

[4] The only change in circumstances was the fact that the Willners filed their claims with the FDIC between the district court's dismissal and the Fourth Circuit's issuance of its decision. But the Fourth Circuit's holding on this point did not turn on whether the Willners had yet filed the claims. The court could hardly have been clearer: FIRREA contains no discovery rule, and thus due process did not prevent application of FIRREA's bar date to claims that do not accrue until after the bar date.

16

As a result, this Court need not determine whether the Willners' claims indeed accrued after the bar date. Even if the Willners could not have discovered their claims with reasonable diligence until after the bar date, the Fourth Circuit has held that the bar date serves as a mandatory, jurisdictional barrier to their assertion of those claims in federal court. This Court therefore lacks jurisdiction over Counts 1–6 of the Amended Complaint and will dismiss those claims.

B.  Counts 7–9: Constitutional Challenges

In addition to their claims related to the pending foreclosure, the Willners raise three constitutional claims, each nominally against the FDIC. On closer examination, however, it is evident that these challenges are not truly legal claims against the agency, but are instead *arguments* that the Court should interpret FIRREA so as to avoid constitutional problems. In Count 7, for example, the Willners allege the following:

> If this Court were to rule that it lacks subject matter jurisdiction because the Willners filed their claims with the FDIC after the Claims Bar Date, then the FDIC's disallowance of their claims would have deprived them of some or all of their protected interests without affording them adequate procedural rights in violation of the Due Process Clause.

This is not an allegation that the FDIC has, in fact, deprived the Willners of due process. Rather, it is an argument that the Court must exercise subject matter jurisdiction over the Willners' claims because the failure to do so would result in a due process violation. The same is true for Count 8, which nominally alleges a violation of the Seventh Amendment trial right, and Count 9, which invokes Article III.

Even accepting that these arguments could be properly construed as allegations against the FDIC, all three fail to state a claim on which relief can be granted. As just explained, the Fourth Circuit expressly held that so long as the Willners had notice of WMB's receivership

17

(which they did), treating the bar date as jurisdictional does not violate due process. Under the doctrine of issue preclusion, the Willners cannot repackage that same argument before this Court. And due process is their only colorable constitutional argument. The Seventh Amendment "was designed to preserve the basic institution of jury trial in only its most fundamental elements." Galloway v. United States, 319 U.S. 372, 392 (1943). As a result, it has never been understood to prohibit time limits, exhaustion requirements, or other procedural devices that, if not complied with, prevent a plaintiff's claims from going to a jury. See, e.g., Parklane Hosiery Co. v. Shore, 439 U.S. 322, 336 (1979) ("[M]any procedural devices developed since 1791 that have diminished the civil jury's historic domain have been found not to be inconsistent with the Seventh Amendment."). Nor do such devices violate Article III, which guarantees an *opportunity* for judicial review of certain claims but allows for restrictions on that opportunity, including subjecting plaintiffs to strict administrative exhaustion requirements. Thus, unsurprisingly, FIRREA's process has been repeatedly upheld in the D.C. Circuit despite the fact that noncompliance with the process forecloses judicial review. See Freeman, 56 F.3d at 1403–05. The Court will dismiss Counts 7 through 9 of the complaint for failure to state a claim.

## IV. Conclusion

The Fourth Circuit held that the Willners' claims related to their refinancing loan are subject to FIRREA's exhaustion requirement. It found that the Willners had actual notice of the fact that WMB went into FDIC receivership, which precludes this Court from finding that FIRREA's statutory exception applies. The Fourth Circuit's rejection of the Willners' due process argument requires that this Court treat FIRREA's bar date as jurisdictional—this Court may not grant equitable relief from it. Thus, because the Willners concededly filed their claims

well after the bar date, this Court lacks subject matter jurisdiction to review the FDIC's denial of those claims as untimely. And the Court finds that the Willners have failed to plausibly state any claims against the FDIC. The Court will therefore dismiss this case, and it need not address the defendants' alternative arguments for dismissal. A separate Order accompanies this Memorandum Opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:   <u>January 4, 2018</u>